IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOY GALLEN-RUIZ : CIVIL ACTION
                                                  :
                                                  :
                        v.                        :
                                                  :
CITY OF PHILADELPHIA, ET AL.     :        NO. 2:08-CV-775-LDD
                                                  :

MEMORANDUM

AND NOW, this  21st  day of July 2008, upon consideration of Defendants' Motion to

Dismiss (Doc. No. 6) and Plaintiff's Response in Opposition (Doc. No. 8), it is hereby

ORDERED that Defendants' Motion is GRANTED in part, and DENIED in part.

I.      FACTUAL BACKGROUND

        Plaintiff Joy Gallen-Ruiz (Caucasian, female) was employed as a police officer for the

City of Philadelphia since April 2000.  Around January 1, 2006, she came under the direct

supervision of defendant Robin Himmons (African-American, female) ("Sgt. Himmons"), who

in turn reported to defendant Marty King (African-American, male) ("Lt. King") as lieutenant of

the 12th Police District.  Plaintiff claims that on January 26, 2006, she submitted papers applying

for a transfer to the Accident Investigation Division ("AID").  (Compl. ¶¶ 19, 20.)  The next day,

plaintiff requested, and was granted, vacation time from an on-duty supervisor, but was then

berated by Sgt. Himmons for not having obtained her approval first.  On February 4, 2006, Sgt.

Himmons and Lt. King asked plaintiff to sign non-disciplinary "training memos," at which point

plaintiff apparently sought union representation.  (Id. ¶ 21.)  On February 6, 2006, plaintiff

approached Union Officer Roosevelt Poplar about her concerns regarding the training memos, and regarding her belief that she was being subjected to discrimination. (Id. ¶ 57.) Plaintiff alleges that Sgt. Himmons then conditioned the approval of plaintiff's AID transfer application on plaintiff's signing of the training memoranda. (Id. ¶ 21.)

About one week later on February 10, 2006, plaintiff was assigned an eight-day foot beat in cold weather, during which she was directed not to take breaks or sit down. She also alleges that she was assigned a "12T1" corner some time during this eight-day period, which she claims no other officer has been assigned. (Id.) On February 20, 2006, plaintiff submitted additional application papers, this time requesting a transfer to the 16th Police District, which she claims were "lost" twice and had to be re-submitted on March 1, 2006 and March 9, 2006. On March 5, 2006, plaintiff reported to Lt. King that she observed Sgt. Himmons sleeping on the job. She claims that thereafter, Sgt. Himmons changed plaintiff's car assignments, called her a "f---ing white b-tch," and attempted to change her locker assignment. (Compl. ¶¶ 28, 29, 39.)

On March 9, 2006, plaintiff was given an unsatisfactory performance review by Sgt. Himmons. A little over a week later on March 21, 2006, plaintiff's transfer request to the 16th Police District was granted, effective March 23, 2006. That same day, plaintiff was allegedly contacted by the Police Department's EEO Unit and asked to "drop the EEO complaint [because] you got what you want." (Id.) The timing and substance of this EEO complaint, however, are unclear, as are plaintiff's general averments that she reported to Lt. King about "having problems" with Sgt. Himmons which she believed "w[ere] due to race and/or sex." (Id. ¶ 23.)[1]

_____

[1]Although not mentioned in her complaint, plaintiff states in her Response in Opposition that she complained to the Police Department's EEO Unit of race/gender

(continued...)

Plaintiff goes on to assert that, around March 28, 2006, Sgt. Himmons "screamed and hollered" at her, (Id. ¶ 21), and further punched her on April 27, 2006 in the presence of two other officers. (Id. ¶ 29.)  According to plaintiff, Sgt. Himmons' actions were motivated not only by racial animus, but also by the fact that plaintiff was a witness for another female employee who had filed an EEO sexual harassment complaint against a previous supervisor.  (Id. ¶¶ 22, 28.)

On April 28, 2006, the day after the alleged assault, plaintiff dual filed a reverse race discrimination charge with the Pennsylvania Human Relations Commission ("PaHRC") and the Equal Employment Opportunity Commission ("EEOC").  On January 7, 2008, after plaintiff had received a right-to-sue letter from the PaHRC, she likewise requested a right-to-sue letter from the EEOC, which has yet to be received.  She filed the instant action on February 19, 2008, alleging an assortment of race discrimination, hostile work environment, and retaliation claims under Title VII, 42 U.S.C. § 1981, and the Pennsylvania Human Relations Act ("PHRA"), as well as several 42 U.S.C § 1983 claims based on alleged violations of her First and Fourth Amendment rights.

II.     LEGAL STANDARD

In deciding a 12(b)(6) motion to dismiss, we must accept as true all factual allegations set forth in the complaint.  See Fed. R. Civ. P. 12(b)(6); Malia v. General Electric Co., 23 F.3d 828, 830 (3d Cir. 1994.  However, "[f]actual allegations must be enough to raise a right to relief above the speculative level," Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007), and a court "need not credit a complaint's 'bald assertions' or 'legal conclusions.'"  Kost v.

──────────────

(...continued)
discrimination soon after she received her unsatisfactory performance review on March 9, 2006.

Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (internal quotation marks omitted); see also

Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 322 (3d Cir. 2008) (in the

employment discrimination context, reiterating Twombly's rejection of the "no set of facts"

standard in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  "In other words, stating . . . a claim

requires a complaint with enough factual matter (taken as true) to suggest the required element."

Wilkerson, 522 F.3d at 322 (citing Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir.

2008) (ellipses in original)).  Therefore, a claim may be dismissed when the facts alleged and the

reasonable inferences therefrom are legally insufficient to support the relief sought.  See

Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 179-80 (3d Cir. 1988).

III.     DISCUSSION

A.      Employment Discrimination Claims[2]

        *Count I: Title VII Discrimination and Retaliation Claims*[3]

        Defendants first seek dismissal on the grounds that the complaint fails to allege any

"adverse employment action" within the meaning of Title VII, 42 U.S.C. 2000e *et. seq.*.  While a

plaintiff alleging Title VII discrimination may satisfy Fed. R. Civ. P 8(a)'s notice pleading

--------

        [2]As an initial matter, plaintiff requests "lost wages and benefits" in her prayer for
relief, which defendants argue should be dismissed outright.  However, as "[t]he purpose of a
12(b)(6) motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts
or decide the merits of the case," we find it premature to dismiss plaintiff's damages request at
this stage.  First Am. Mktg. Corp. v. Canella, 2004 U.S. Dist. LEXIS 2251, *25 (E.D. Pa. Jan.
26, 2004).

        [3]Plaintiff's complaint is remarkably unclear about whether she seeks relief under a
substantive theory of intentional discrimination or a retaliation theory of discrimination.  Her
Response in Opposition, which directly cuts and pastes large portions of defendants'
memorandum, provides little additional guidance.  Nevertheless, we read her claims generously
to encompass both legal theories.

requirements without alleging facts to establish her *prima facie* case — for which adverse employment action is an element — her complaint must nevertheless set forth facts sufficient to "give[] respondent[s] fair notice of the basis for [her] claims." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-12, 514 (2002). See also Phillips, 515 F.3d at 234. Thus, in this context the Third Circuit has held that "[i]n order to be entitled to relief, a plaintiff must have suffered a cognizable injury." Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004) (affirming a district court's dismissal of plaintiff's discrimination complaint because he failed to allege that he suffered an adverse employment action); see also Toll v. Am. Airlines Inc., 166 Fed. Appx. 633, *637-38 (3d Cir. Feb. 13, 2006) (same).

An adverse employment action "is one which is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001) (internal citations omitted). More specifically, a tangible employment action typically "inflicts direct economic harm" and/or "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761-62 (1998). Here, the Court can identify nothing in plaintiff's complaint which, even if taken as true, would rise to the level of an adverse employment action. That plaintiff's transfer was delayed for several weeks before being granted, that she was not afforded union representation prior to being given non-disciplinary "training memos," and that she was assigned a foot beat for an eight-day period during winter do not constitute sufficiently serious actions which would support a claim for relief. In a similar vein, the allegation that plaintiff was yelled at and punched by Sgt. Himmons likewise does not

constitute an *employment*-related action for purposes of Title VII.  See id. at 762 ("A tangible employment decision requires an official act of the enterprise, a company act.").

Furthermore, we are unpersuaded by plaintiff's claim that she was subjected to adverse employment action when she received a negative performance evaluation.  In Weston v. Pennsylvania, the Third Circuit reversed a district court's determination that adverse employment action had occurred when an employee was issued two written reprimands which were kept in an his file for extended periods.  251 F.3d 420, 431 (3d Cir. 2001).  Finding that the plaintiff-employee suffered no pay reduction or demotion, and that the reprimands "were of a temporary nature," the Court of Appeals concluded that the reprimands did not "effect a material change in the terms or conditions of his employment" such that they could be fairly characterized as adverse employment actions.  Id.  As plaintiff here likewise alleges no tangible consequences resulting from her negative evaluation, we find the Weston court's holding dispositive.[4] Plaintiff's discrimination claim must therefore be dismissed.

On the other hand, plaintiff's retaliation claim must survive.  In Burlington Northern & Santa Fe Ry. v. White, the Supreme Court held that "Title VII's substantive provision and its antiretaliation provision are not coterminous.  The scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm."  126 S. Ct. 2405, 2414 (2006) (holding that, in contrast with the antiretaliation provision, the language of Title VII's substantive provision "explicitly limit[s] the scope of that provision to actions that affect

---

[4]We recognize that the Third Circuit's treatment of this particular issue in Weston v. Pennsylvania was upon consideration of a summary judgment appeal.  251 F.3d 420 (3d Cir. 2001).  Nevertheless, we find the Court's reasoning applicable given that, even accepting all of plaintiff's factual allegations as true, we could not find as a matter of law that an adverse employment action occurred here.

employment or alter the conditions of the workplace").[5]  Accordingly, the level of injury a

plaintiff must demonstrate on a retaliation claim differs from that on a discrimination claim, in

that she need simply show that the employer's action "well might have 'dissuaded a reasonable

worker from making or supporting a charge of discrimination.'" Id. at 2415 (quoting Rochon v.

Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).  In this case, plaintiff has sufficiently alleged

that Sgt. Himmons' actions — the assault, humiliation, and negative performance evaluation —

likely would have deterred her from engaging in protected EEO activities.[6]  Defendants' motion

as to her Title VII retaliation claim is therefore denied.

    *Count II: Title VII Hostile Work Environment Claim*

    Defendants move to dismiss plaintiff's hostile work environment claim on the basis that

she failed to attach her right-to-sue letter from the EEOC.  However, the Third Circuit has

unequivocally stated that "the failure to obtain a right-to-sue letter . . . is curable at any point

during the pendency of the action."  Anjelino v. New York Times Co., 200 F.3d 73, 96 (3d Cir.

1999) (citing Gooding v. Warner-Lambert Co., 744 F.2d 354, 358 (3d Cir. 1984) ("a [right-to-

_____

        [5]In Ridley v. Costco Wholesale Corp., 217 Fed. Appx. 130, *14 (3d Cir. Feb. 5,
2007), the Third Circuit Court of Appeals noted that Burlington Northern & Santa Fe Ry. v.
White, 126 S. Ct. 2405 (2006), abrogated its earlier decision in Robinson v. Pittsburgh, 120 F.3d
1286, 1300 (3d Cir. 1997), where it held the standard for "adverse employment action" to be
effectively the same in substantive discrimination and retaliation cases.

        [6]Plaintiff makes much of the fact that Sgt. Himmons' alleged mistreatment of her
stemmed from the fact that plaintiff reported seeing her asleep while on duty.  (Compl. ¶¶ 28, 29,
39.)  Defendants correctly contend, however, that this point is irrelevant since plaintiff's act of
reporting — in this context — cannot in any way be construed as "protected activity" meriting
Title VII relief.  See Moore v. City of Philadelphia, 461 F.3d 331, 341 (3d Cir. 2006) ("With
respect to 'protected activity,' the anti-retaliation provision of Title VII protects those who
participate in certain Title VII proceedings (the 'participation clause') and those who oppose
discrimination made unlawful by Title VII (the 'opposition clause').") (internal citations
omitted).  Plaintiff's report that she observed Sgt. Himmons sleeping constitutes neither of these.

sue] letter is not a 'jurisdictional' requirement in the constitutional sense, but rather a statutory requirement subject to waiver as well as tolling when equity so requires")).  See also Burgh v. Borough Council of Montrose, 251 F.3d 465, 470 (3d Cir. 2001) (explaining that "[n]othing in the statute or the regulations . . . requires a complainant to request a right-to-sue letter," but once such a letter is received, plaintiff must bring suit within 90 days).  Since plaintiff filed her EEOC charge on April 28, 2006, well over 180 days ago, and since she requested a right-to-sue letter on January 7, 2008, this Court cannot properly dismiss her claim at this stage in the litigation. Moreover, under the Supreme Court's standard in Harris v. Forklift Sys., plaintiff has sufficiently pled that her circumstances created "an objectively hostile or abusive work environment" such that her claims fall within the purview of Title VII.  510 U.S. 17, 21 (1993).  Defendant's motion as to her hostile work environment claim must therefore also be denied.[7]

*Count VI: PHRA Claim*

Defendants likewise move to dismiss plaintiffs' state law discrimination claims solely on the ground that she failed to provide an EEOC right-to-sue letter.  Thus, Count VI of the complaint must survive to the extent that it alleges discrimination based on theories of hostile work environment and retaliation.  Any claims of substantive discrimination, however, both as to

---

[7]In Count IV of her complaint plaintiff cites a separate cause of action, 42 U.S.C. § 1981, in alleging intentional race discrimination against Sgt. Himmons and Lt. King. Defendants did not move to dismiss this count.  Had they done so, however, it would invariably fail for the same reasons articulated in our discussion of Count I because employment-based claims under § 1981 — whether against individuals or the employer — and Title VII are analyzed under the same legal framework, see Jones v. School Dist. of Philadelphia, 198 F.3d 403 (3d Cir. 1999), and because plaintiff's § 1981 claim is couched exclusively in the language of discrimination, not retaliation.  See also Schurr v. Resorts Int'l Hotel, Inc., 196 F.3d 486, 499 (3d Cir. 1999) ("In the Third Circuit, the elements of employment discrimination under Title VII are identical to the elements of a section 1981 claim") (internal citations omitted); Clinkscales v. Children's Hosp. of Phila., 2007 U.S. Dist. LEXIS 83930, *17 (E.D. Pa. Nov. 9, 2007).

the City of Philadelphia as well as the two individual defendants, must fail in light of our above analysis of Count I.  See Jones v. School Dist. of Philadelphia, 198 F.3d 403 (3d Cir. 1999) (applying the same legal framework to discrimination claims brought under Title VII and the PHRC).

B.    Constitutional Claims

*Count III: § 1983 Claim for Excessive Force*

In Count III of the complaint, plaintiff claims that Sgt. Himmons violated her Fourth Amendment right against the use of excessive force when she allegedly punched her on April 27, 2006.  Under 42 U.S.C. § 1983, which provides a civil remedy for the deprivation of one's constitutional rights, two essential elements must be alleged when making such a claim: 1) that the conduct complained of was committed by a person acting under color of state law; and 2) that this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.  Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 326 (1986).

Here, plaintiff's claim must be dismissed for failure to allege that Sgt. Himmons was acting "under color of state law."  It is well-established that "an otherwise private tort is not committed under color of law simply because the tortfeasor is an employee of the state."  Mark v. Borough of Hatboro, 51 F.3d 1137, 1150 (3d Cir. 1995).  "[E]ven acts committed by a police officer . . . while on duty and in uniform are not under color of state law unless they are in some way related to the performance of police duties."  Id. at 1151 (ellipses in original) (quoting Briscoe v. LaHue, 663 F.2d 713, 721 n.4 (7th Cir. 1981)).  See also Gueits Colon v. De Jesus, 177 F. Supp. 2d 128, 136 (D.P.R. 2001) (finding that defendant police officer who engaged in a

fistfight with plaintiff police officer was not acting under color of state law, because defendant was rushing to the hospital when plaintiff attempted to detain him and was therefore "acting in furtherance of a purely personal pursuit" and not "in furtherance of an arrest, detention, or any other official duty").

Although plaintiff claims that she was punched while both she and Sgt. Himmons were at work, she nevertheless fails to allege sufficient facts to support the claim that Sgt. Himmons was acting under color of state law.  There is no averment that Sgt. Himmons' action was in any way related to the performance of her official duties or her governmental status, and the Court cannot find any allegation beyond the occurrence of a personal altercation between two co-workers with a difficult working relationship.  See Mark, 51 F.3d at 1151 (holding that "acts of officers in the ambit of their personal pursuits are plainly excluded" from the purview of §1983).  While plaintiff attempts to import state action into her complaint by characterizing the incident as a "Terry stop type situation," (Pl.'s Resp. at 11), she has pled nothing which even comes close to the Terry scenario of a suspect being stopped and frisked upon an officer's suspicion of criminal activity.  Terry v. Ohio, 392 U.S. 1, 27 (1968).  We therefore agree with defendants that § 1983 "simply does not lend itself to the situation that plaintiff sets forward."  (Defs.' Memo. at 8.) Plaintiff's § 1983 excessive force claim must therefore be dismissed.

*Count V: § 1983 Claims for First Amendment retaliation*[8]

---

[8]At the outset, defendants urge us to dismiss plaintiff's § 1983 claims on the basis that they are barred, in part, by the applicable two-year statute of limitations.  (See Defs.' Memo. at 18.)  See Osei-Afriyie v. Medical College, 937 F.2d 876, 883 (3d Cir. 1991) (stating that the statute of limitations for § 1983 civil rights claims are borrowed from Pennsylvania's two-year statute of limitations for personal injuries).  Since plaintiff filed the instant complaint on February 19, 2008, we will dismiss her allegations of any First Amendment retaliatory conduct to
(continued...)

Defendants next move to dismiss plaintiff's § 1983 claim that she was retaliated against for exercising her First Amendment right to free speech.  To assert a § 1983 Free Speech retaliation claim, plaintiff must first allege that she engaged in protected speech, Baldassare v. New Jersey, 250 F.3d 188, 194-95 (3d Cir. 2001), which is turn involves a showing that she spoke as a citizen on a matter of public concern.  Connick v Myers, 461 U.S. 138, 147 (1983).  In this instance, plaintiff implicitly concedes that she did not speak as a citizen in reporting Sgt. Himmons and Lt. King's allegedly discriminatory acts to the Police Department's EEO Unit, the PaHRC, and the EEOC, since she made these statements pursuant to her official duties as an employee of the police force.  See Pl's Resp. at 13; Garcetti v Ceballos, 126 S. Ct 1951, 1960 (2006) ("[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.").

However, plaintiff contends that her February 6, 2006 grievance to a union official did constitute protected speech.  She argues that this speech, unlike her internal reporting, was made as a citizen because she spoke in her capacity as a union member, not as an employee.  Accepting all of plaintiff's factual allegations as true, we must agree.  See Hoffman v. Dougher, 2008 U.S. Dist. LEXIS 2610, *24 (M.D. Pa. Jan. 14, 2008) (finding that the plaintiff "was speaking as a citizen" because his speech was made "'in his capacity as a union representative, rather than in the course of his employment'") (quoting Fuerst v. Clarke, 454 F.3d 770, 774 (7th Cir. 2006)); Shirden v. Cordero, 509 F. Supp. 2d 461, 466-67 (D.N.J. 2007) (same).  Furthermore, since

---

[8](...continued)
the extent that such conduct occurred prior to February 19, 2006.

11

plaintiff specifically avers that she spoke to the union official about the "different treatment by

Himmons and King because of the Plaintiff's sex or race," (Compl. ¶ 57), we find that she has

properly alleged that she spoke on a matter of public concern.  See Azzaro v. County of

Allegheny, 110 F.3d 968, 978 (3d Cir. 1997) (emphasizing the Supreme Court's characterization

of race discrimination as "a matter inherently of public concern" in Connick, 461 U.S. at 148

n.8); Sanguigni v. Pittsburgh Bd. of Public Educ., 968 F.2d 393, 397 (3d Cir. 1992)

("[C]omplaints about racial discrimination constitute[] matters of public concern.").[9]  As

defendants do not dispute the remaining elements of plaintiff's Free Speech claim, this claim

therefore survives.

This, however, does not end our discussion of plaintiff's First Amendment claims.  She

cites the same conduct — expressing her complaints of discrimination to the union, to the Police

Department's EEO Unit, and to the PaHRC/EEOC — in support of a separate claim based on the

First Amendment's Petition Clause.  The Third Circuit recently explained the basis for a Petition

Clause retaliation claim:

> A public employee who has petitioned the government through a formal
> mechanism such as the filing of a lawsuit or grievance is protected under
> the Petition Clause from retaliation for that activity, even if the petition
> concerns a matter of solely private concern. . . .  "[W]hen one files a
> 'petition' one is not appealing over government's head to the general
> citizenry: when one files a 'petition' one is addressing government and

---

[9]Moreover, the Supreme Court has cautioned that "[w]hether an employee's
speech addresses a matter of public concern must be determined by the content, form and context
of a given statement, *as revealed by the whole record*."  Connick v. Myers, 461 U.S. 138, 147-48
(1983).  Thus, the Third Circuit, in reviewing a district court's dismissal of plaintiff's claims on a
12(b)(6) motion, concluded that "we cannot determine in this procedural posture whether the
speech involved a matter of public concern," since doing so would require a full examination of
the record.  Hill v. Borough of Kurtztown, 455 F.3d 225, 243 (3d Cir. 2006).  Further discovery
on this issue is therefore warranted.

> asking government to fix what, allegedly, government has broken or has
> failed in its duty to repair." . . .   Whereas the Free Speech Clause protects
> the right to "wide-open" debate, the Petition Clause encompasses only
> activity directed to a government audience.

Foraker v. Chaffinch, 501 F.3d 231, 235-38 (3d Cir. 2007) (quoting San Filippo v. Bongiovanni,

30 F.3d 424, 442, (3d Cir. 1994)).

Here, only plaintiff's union grievance and internal reporting merit consideration for

Petition Clause protection, as her PaHRC/EEOC filings post-date all of Sgt. Himmons and Lt.

King's alleged misconduct and thus cannot support a claim for retaliation.  Defendants argue that

these informal complaints did not constitute "petitions" for purposes of the First Amendment, as

neither was directed to a "state agency *qua* agency."  (Defs.' Memo. at 14-16.)  However, the

Court of Appeals has not limited the definition of "petitions" exclusively to grievances made to

an external government entity.  In San Filippo v. Bongiovanni, it held that the Petition Clause is

properly implicated "when government — federal or state — formally adopts a mechanism for

redress of those grievances for which government is allegedly accountable" and an individual

invokes that mechanism.  30 F.3d at 442.

> One example of formal governmental adoption of a mechanism for redress
> of grievances is entry into a collective bargaining agreement that provides
> for a grievance procedure. . . .  If government could, *qua* employer, freely
> discharge an employee for the reason that the employee, in order to present a
> non-sham claim against the government-employer, invoked such a
> mechanism, the petition clause of the first amendment would, for public
> employees seeking to vindicate their employee interests, be a trap for the
> unwary — and a dead letter.

Id.  See also Lohman v. Duryea Borough, 183 L.R.R.M. 2297, *33 (M.D. Pa. Nov. 29, 2007)

(finding that union grievance qualified as protected activity under the Petition Clause); Porter v.

Intermediate Unit I, 2007 U.S. Dist. LEXIS 65427, *33 (W.D. Pa. Sept. 5, 2007) (same).

Plaintiff's allegations that she was retaliated against for her February 6, 2006 grievance to the union official are therefore sufficient to withstand defendant's motion to dismiss.

In contrast, plaintiff's allegations of retaliation based on her internal EEO report must fail. In Foraker, the Third Circuit expressly held that the plaintiffs' internal complaints to their employer, which also happened to be a governmental agency, did not constitute Petition Clause-protected activity. 501 F.3d at 237-38 (citing Hilton v. City of Wheeling, 209 F.3d 1005, 1007 (7th Cir. 2000) for the proposition that "the right to petition for redress of grievances [does not] imply a duty of the government to make every government employee [or entity] a petition receiver"). In so ruling, the court cited its earlier decision in Hill v. Borough of Kurtztown, where it stated that "[the Third Circuit] ha[s] never held . . . that a report of a superior's misconduct to a legislative body when the legislative body is also the reporter's employer constitutes 'petitioning activity.'" 455 F.3d 225, 242 n.24 (3d Cir. 2006) (ellipses in original).[10] Based on such precedent, we cannot find that plaintiff adequately asserted a Petition Clause retaliation claim based on her internal EEO report.[11]

---

[10]See also Connick, 461 U.S. at 143 (emphasizing the "common-sense realization that government offices could not function if every employment decision became a constitutional matter").

[11]We likewise cannot find that plaintiff has asserted a Monell claim for municipal liability against defendant City of Philadelphia. See Monell v. New York City Dept. of Social Servs., 436 U.S. 658 (1978). While the Supreme Court in Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993), held that Monell claims were subject only to Fed. R. Civ. P. 8(a)'s notice pleading requirements, the complaint here contains no allegations of any kind of municipal liability for plaintiff's claimed First Amendment violations. "[A] municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell, 436 U.S. at 691. Count V of plaintiff's complaint is therefore dismissed as to the City of Philadelphia.

IV.     CONCLUSION

For the reasons stated above, it is hereby ORDERED that Defendant's Motion to Dismiss (Doc. No. 6) is GRANTED in part, and DENIED in part.  An appropriate order follows.


BY THE COURT:

/S/LEGROME D. DAVIS

Legrome D. Davis, J.